STATE OF CONNECTICUT *v.* ANDREW L. LAMOTHE
(AC 17812)

Foti, Mihalakos and Zarella, Js.

Argued January 26—officially released May 23, 2000

*Joseph A. Moniz,* with whom was *Mario R. Borelli,* for the appellant (defendant).

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Anne Mahoney,* assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Andrew L. LaMothe, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] two counts of sexual assault in the second degree in violation of General Statutes § 53a-71[2] and one count of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21.[3] On appeal, the defendant claims that (1) his due process rights were violated by the state's inability to provide a more specific date on which the alleged crimes occurred and (2) there was insufficient evidence to support his conviction beyond a reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim and the defendant were neighbors.

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The victim, who was born on June 22, 1981, was approximately five years younger than the defendant. The defendant began visiting the victim's house when he was eighteen years old. Although the defendant ostensibly visited to spend time with the victim's brother and friends, he spent most of his time with the victim.

The victim's mother noticed the attention that the defendant was paying to her daughter and told him that he was no longer welcome at their house. During this period of time, the defendant and the victim periodically talked on the telephone. On a few occasions, at the end of their conversations, the defendant would ask the victim to meet him outside her house late at night. On several occasions, the victim agreed to do so, but after the victim snuck out of her house she discovered that the defendant was not there to meet her.

In June, 1994, before the victim's thirteenth birthday, the defendant asked her to meet him outside her house at 1:30 a.m. The victim snuck out of her house, met the defendant, walked with him to his house and went to his bedroom. The defendant and the victim proceeded to have sexual intercourse. The victim began crying and told the defendant that it hurt and she was going to scream. The defendant threatened to put a sock in her mouth to keep her quiet. Afterward, at approximately 3:30 a.m., the defendant walked the victim home. During this and subsequent encounters, the victim thought she was in love with the defendant.

On the following Monday, the victim told one of her friends that she had had sex with the defendant. The defendant also told one of his friends, in June or July, 1994, about the sexual encounter. Subsequently, the defendant's friend asked the victim whether it was true that she had had sex with the defendant. The victim became embarrassed and angry, and told the defen-

dant's friend that she hated him because he knew about what had happened.

The defendant and the victim did not talk again until September, 1994, when they resumed talking on the telephone. The defendant asked the victim to meet him again at 1:30 a.m. one Saturday morning, and she agreed to do so. They met and had sexual intercourse at the defendant's house at approximately 3:30 a.m.

One evening in December, 1994, the defendant went to the victim's house at approximately 7 p.m. and asked her to come to his house. The victim's parents were not home. The victim and the defendant went to his house and had sex for the third time. The victim told her friend about this encounter as well. On April 13, 1995, the victim told Daniel Gottschall, a physician who examined her, that she had had sexual intercourse with a nineteen year old man.

I

The defendant first claims that the court improperly denied his motion for a new trial. The defendant claims that his due process rights were violated when the state failed to specify the dates on which the offenses occurred, thereby limiting his ability to present an alibi defense. We decline to review this claim because the defendant did not properly preserve this issue for appeal.

The following additional facts are necessary for a resolution of this issue. The state filed an information dated August 29, 1995, charging the defendant with one count of sexual assault in the first degree "on or about 6/94, 9/94 and 12/94"; two counts of sexual assault in the second degree "on or about 6/94, 9/94 and 12/94"; and three counts of risk of injury to a child "on or about 6/94, 9/94 and 12/94." On June 23, 1995, a substitute information was filed, charging the defendant with one

count of sexual assault in the first degree "on or about 6/94"; two counts of sexual assault in the second degree "on or about 9/94" and "on or about 12/94"; and three counts of risk of injury to a child "on or about 6/94," "9/94" and "12/94."

On August 29, 1995, the state filed a demand for notice of an alibi. On September 8, 1995, the defendant filed a response, stating that the demand filed by the state was "too vague as to when the alleged offense or offenses were to have been committed" to allow him to "determine if he has an alibi" defense. Additionally, the defendant in his response sought an order from the court "relieving him of such compliance until a more specific time, date and place is stated by the prosecuting authority." The record does not reflect any action by the court on this request. On September 10, 1995, the state filed another substitute information.

Significantly, the record reflects that the defendant's trial counsel neither filed a motion for a bill of particulars pursuant to Practice Book §§ 41-20 and 41-21 nor moved to dismiss the information pursuant to Practice Book §§ 41-8 through 41-11. A request for a bill of particulars is the appropriate procedural mechanism for the defendant "to obtain a more precise statement of the offense charged in the information in order to prepare a defense." (Internal quotation marks omitted.) *State* v. *Flanders*, 214 Conn. 493, 503, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990). Practice Book § 41-21 provides in relevant part that "[t]he judicial authority shall order that a bill of particulars disclose information sufficient to enable the defendant to prepare the defense, including but not being limited to reasonable notice of the crime charged and the date, time, and place of its commission." Failure by the defendant to utilize these pretrial motions constituted a waiver. Practice Book § 41-4. Furthermore, "[b]ecause the defendant's claim did not allege an error

made in the course of the trial, a motion for a new trial pursuant to [Practice Book § 42-53] was not the proper vehicle by which to pursue the claim." *State* v. *Synakorn*, 239 Conn. 427, 435, 685 A.2d 1123 (1996).[4]

The defendant, therefore, did not properly raise or preserve this issue for appeal. Because our review is limited to matters in the record, we will not address issues not decided by the trial court. Practice Book § 60-5; *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982) ("[o]nly in the most exceptional circumstances will this court consider even a constitutional claim not properly raised and decided in the trial court").

The defendant also has not sought to raise a claim of entitlement to the extraordinary review provided under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "In the absence of such a request, we have, in the past, declined to review a defendant's claim under similar circumstances." *State* v. *Rogers*, 38 Conn. App. 777, 787, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996). We therefore decline to review this unpreserved claim.

II

The defendant claims next that the evidence presented at trial was insufficient to support the jury's finding of guilt under §§ 53a-70 (a) (2), 53a-71 and 53-21. We disagree.

"In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom

[4] Although the defendant included the issue of lack of specificity in his written motion for a new trial, he did not pursue this issue at oral argument on the motion, and the trial court did not rule on it.

the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ingram*, 43 Conn. App. 801, 809, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

The defendant claims that the victim's version of the events "confounds common sense and logic" and is "utterly implausible." It is the province of the jury, however, to draw reasonable and logical inferences from the facts found. *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). "We do not sit as the [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." Id. We conclude that the cumulative effect of the evidence was sufficient to allow the jury to find beyond a reasonable doubt that the defendant did, in fact, commit the crimes charged.

The defendant also claims that his due process rights were violated because the state did not present sufficient evidence for the jury to find that the victim was younger than thirteen at the time that sexual intercourse occurred. The defendant, however, ignores the victim's testimony that the first encounter took place in June, 1994, prior to her thirteenth birthday.

In this case, the jury reasonably could have concluded that the defendant and the victim engaged in sexual intercourse on three separate occasions. Additionally, the jury reasonably could have found that on the first of those three occasions, the victim was not yet thirteen years old. In addition to the testimony of the victim, the state presented constancy of accusation witnesses

as well as the testimony of the defendant's friend, who testified that the defendant admitted to having sex with the victim.

The credibility of the witnesses is for the jury to determine. See *State* v. *Santiago*, 245 Conn. 301, 318, 715 A.2d 1 (1998). The jury may "draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 224, 733 A.2d 156 (1999). As previously noted, our function is to determine from the record whether the jury reasonably could conclude, from the facts it found and the inferences reasonably drawn from them, viewed in a light most favorable to the state, whether the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Ingram*, supra, 43 Conn. App. 809. We conclude that there was sufficient evidence from which the jury reasonably could have found the defendant guilty of all charges beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.