STATE OF CONNECTICUT *v.* EDUARDO ADORNO
(AC 30484)

Bishop, Beach and Schaller, Js.

Argued February 2—officially released June 8, 2010

*Alice Osedach,* assistant public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich,* state's attorney, and *Matthew A. Crockett,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Eduardo Adorno, appeals from the judgment of conviction, rendered following a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2005) § 53a-73a (a) (1) (A) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that the trial court improperly (1) precluded evidence related to the prior sexual history of the victim,[1] (2) prohibited him from introducing evidence of bias, prejudice or interest pursuant to § 6-5 of the Connecticut Code of Evidence and (3) instructed the jury that to find him guilty of risk of injury to a child, it had to find that his conduct was "likely to impair the child's health or morals" and that the term "likely" was to be understood as meaning that in all "probability or possibility" the defendant's conduct had impaired the victim's health or morals. We reverse in part and affirm in part the judgment of the trial court.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

The state presented evidence that, in November, 2005, the defendant, who is a relative of the victim's father, moved into the victim's father's home with his girlfriend. The victim was thirteen years old at the time. Her parents were divorced, and she stayed primarily at her father's home in Danielson, which had a finished basement where the victim and her two older sisters each had their own bedrooms. The basement also contained a guest room, a room used for the computer and laundry and a living room area. The defendant and his girlfriend stayed in the living room area of the basement.

A few days after the defendant moved in, around mid-November, the defendant was lying on his bed, and the victim was sitting on the edge of the bed, watching television. The victim was telling the defendant that her shoulders were sore from cheerleading practice, which she had just attended. In response, the defendant stood up, walked over to the victim and began massaging her shoulders. Soon thereafter, the defendant moved his hands downward and began massaging the victim's breasts with both hands. After two or three seconds, the defendant stopped and left the room. The victim did not tell anyone about this incident at that time.

Approximately one week later, the victim was in the computer room, talking to a friend on the telephone. She was seated at a desk when the defendant came in and began massaging her shoulders, eventually moving his hands to her breasts. After approximately two seconds, the victim pushed the defendant's hands away. As the defendant left the room, he stopped and told the victim that he loved her. The victim responded by telling the defendant that she hated him.

The victim testified that, later that night, she was lying on her bed, underneath the covers, watching television. She stated that the defendant entered her bedroom and asked if he could watch television with her, to which

she acceded. The victim testified that the defendant joined her under the covers and, after a few minutes, pushed her pants down and put his penis into her vagina two or three times. The victim indicated that it lasted for a few seconds and that she tried to scream, but she did not know if anybody heard her. The defendant left her room without saying anything, and she stayed in her room and cried. She did not tell anybody about this incident at that time.

A few days later, the victim told her boyfriend that the defendant had touched her inappropriately on two occasions. She did not tell him about the last incident involving the alleged sexual penetration. Shortly thereafter, the victim told her mother that the defendant had touched her twice, but she did not tell her mother about the incident in her bedroom. After the victim's mother told her father, the father confronted the defendant, who denied the allegations. The victim's father nevertheless drove the defendant back to New York, and the defendant did not return to the victim's father's house again.

Several months later, in May, 2006, the victim's mother took her to a doctor because she had symptoms of a urinary tract infection. In the waiting room of the doctor's office, the victim, for the first time, told her mother that the defendant had sexually assaulted her in November, 2005. They did not disclose this information to the doctor.

A couple of weeks later, the victim's mother took her to Planned Parenthood of Connecticut, Inc. (Planned Parenthood). Planned Parenthood contacted the department of children and families to report the defendant, and the department of children and families contacted the state police in Danielson to report the allegations. When the defendant was interviewed by the police, he denied that he had engaged in any kind of

sexual contact with the victim but later stated that if there had been any type of sexual contact between him and the victim, it was accidental. Before signing his written statement, however, the defendant insisted that the line, "[a]nd if I did it," be crossed out.

Consequently, the defendant was arrested and charged with two counts of sexual assault in the fourth degree, and two corresponding counts of risk of injury, for allegedly touching the victim's breasts. The defendant was also charged with one count of sexual assault in the first degree, and one corresponding count of risk of injury, for the alleged incident that occurred in the victim's bed. The jury found the defendant not guilty of sexual assault in the first degree but found him guilty of the remaining charges. The defendant was sentenced to concurrent terms of incarceration of six years, followed by fourteen years of special parole, for each risk of injury conviction, and concurrent terms of five years for each fourth degree sexual assault conviction. The sentences were all to run concurrently with each other for a total effective sentence of six years to serve and fourteen years special parole. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly precluded him from introducing evidence related to the sexual history of the victim. We agree, in part, with the defendant's claim.

The following additional facts are relevant to the defendant's claim. Prior to the commencement of trial, on June 19, 2008, the defendant filed a motion to introduce evidence of the victim's sexual relationship with her boyfriend, as well as a motion for a hearing on the admissibility of such evidence pursuant to the rape

shield statute, General Statutes § 54-86f.[2] On July 3, 2008, the defendant filed an amended motion for an evidentiary hearing as to the admissibility of evidence of the victim's sexual history, which superseded his earlier motion. Prior to the start of evidence, on July 14, 2008, the court heard arguments on the defendant's motions. According to the defendant's representations to the court, he intended to introduce evidence to establish that when the victim initially discussed the sexual assault with the Planned Parenthood counselors, she denied that she had been sexually active with anyone else. Subsequently, however, she told the counselors that she and her boyfriend had been engaging in sexual relations from November, 2005, until May, 2006, approximately two times per month, and that her parents did not know that she was sexually active.

Although the defendant's motions invoked all four exceptions of the rape shield statute, when defense counsel argued the motions before the court, he limited the defendant's claim of admissibility to subdivisions (2) and (4) of the statute. The defendant's argument

[2] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . ."

was twofold. First, the defendant contended that the evidence regarding the victim's allegedly deceptive comments to Planned Parenthood counselors about her sexual activity with her boyfriend was relevant to her general credibility. Second, the defendant asserted that evidence of the victim's sexual relationship with her boyfriend was relevant to his theory of defense that the victim feared that her urinary tract infection was the result of sexual activity and that she falsely accused the defendant so that her sexual relationship with her boyfriend would not be discovered. The court denied the defendant's motions as premature because the victim had not yet testified.

After the victim testified on direct examination, the defendant renewed his request to question the victim about her sexual relationship with her boyfriend. The defendant argued that the case was dependent on the victim's credibility and that the fact that she had concealed her sexual relationship with her boyfriend bore directly on her credibility. The defendant sought to cross-examine her regarding her sexual conduct with her boyfriend, including her inconsistent statements to others about that conduct, insofar as it related to her general credibility. The defendant argued that the victim's desire to conceal her sexual relationship with her boyfriend provided her motive for alleging that the defendant sexually assaulted her in that she was trying to keep secret her sexual conduct with her boyfriend. The court denied the defendant's request, stating that inquiry into specific instances of conduct is not the proper method to attack a witness' character under § 4-4 of the Connecticut Code of Evidence. The court found that the victim had not "opened up the door" to the evidence under § 54-86f (2) and denied the defendant's motion again without prejudice.

Audrey Courtney, a nurse who specializes in the examination of sexual assault victims and who examined the victim in this case, also testified for the state.

During the cross-examination of Courtney, defense counsel asked: "And are you aware that [the victim] gave a contradictory history to another agency regarding certain aspects of your examination?" Courtney responded: "No, I'm not." The state objected to the question, and the defendant contended that the question had been asked and answered, and the court agreed. The court ruled, however, that the defendant could not attack the victim's credibility in this manner and held that the defendant could not further pursue this line of inquiry.

After the state rested its case, the defendant again renewed his motion to introduce evidence of the victim's sexual history and the "deceptive comments" that she had made to two Planned Parenthood counselors regarding her sexual relationship with her boyfriend. The court again denied the defendant's request, concluding that the proffered testimony constituted improper extrinsic evidence of specific conduct of the victim for the purpose of impeaching her credibility.

On August 13, 2008, following the acceptance of the jury's verdict, the defendant filed a motion to set aside the verdict and a motion for a new trial, in which he again argued that the evidence of the victim's sexual relationship with her boyfriend was admissible under § 54-86f (4) and contended that he had been denied his constitutional right to confrontation. The court denied the defendant's motions.

On appeal, the defendant argues that the court improperly precluded evidence that the victim had a sexual relationship with her boyfriend. The defendant argues that this evidence was admissible under § 54-86f (4)[3] and that its preclusion violated his constitutional rights to confront his accuser and to present a defense.

[3] Although the defendant argued to the court that the evidence was admissible also pursuant to subdivision (2) of the rape shield statute, the defendant has not briefed that claim on appeal.

"Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 173, 777 A.2d 604 (2001).

"The rape shield statute excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied. . . . The statute was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. . . . Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. . . .

"Although the state's interests in limiting the admissibility of this type of evidence are substantial, they cannot by themselves outweigh the defendant's competing constitutional interests. . . . The determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the particular case. . . .

"[T]he right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . Such an interest includes the trial court's right, indeed, duty, to exclude irrelevant evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Christiano*, 228 Conn. 456, 469–70, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994).

Section 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ."

"Section 54-86f provides for a two step process before evidence proffered by a defendant as falling under one of the statute's exceptions may be admitted. First, if the defendant has satisfied his preliminary burden in his offer of proof to show that the evidence is potentially relevant, pursuant to the statute the trial court must conduct a hearing to determine the admissibility of the evidence. Second, [i]f, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . .

"In the first step of this two part process, the defendant bears the burden of showing that the proffered evidence overcomes the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a rape victim is inadmissible and satisfies the statute's requirement that only evidence relevant to the case, rather than

evidence relevant merely to demonstrate the unchaste character of the victim, be admissible. . . .

"If the trial court determines that the evidence is relevant and admissible under one of the exceptions enumerated in § 54-86f, the trial court must proceed to the second part of the two part process outlined in the statute. That is, the evidence is admissible only if its probative value outweighs the prejudicial impact on the victim. . . .

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . In considering whether evidence was sufficiently relevant to fall under one of the exceptions enumerated in § 54-86f, we have drawn a distinction between, on the one hand, evidence that is relevant to establish some portion of the theory of defense or rebut some portion of the state's case, which is admissible if the court determines that the probative value of the evidence outweighs its prejudicial impact on the victim, and, on the other hand, evidence that is offered as an impermissible attempt to establish the victim's general unchaste character as prohibited by the rape shield statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 280 Conn. 285, 295–97, 907 A.2d 73 (2006).

Here, the state concedes that the defendant satisfied the burden of showing that the victim may have had a motive to lie about the defendant's sexual assault in

order to conceal her sexual relationship with her boyfriend from her parents. We agree. Because the proffered evidence would have been relevant to the defendant's theory that the victim lied about the sexual assault by the defendant in order to cover up the possibility that her boyfriend was the source of any infection that a medical examination might reveal, it should have been allowed into evidence as to the charge of sexual assault in the first degree. The defendant's claim is moot as it pertains to the charge of sexual assault in the first degree as he was acquitted of that charge. Because the risk of injury charge set forth in count six of the information stemmed from that sexual assault charge, however, that conviction should be reversed and the case remanded for a new trial on the risk of injury charge set forth in count six of the information.

The proffered evidence of the victim's sexual history does not, however, bear on the allegations that the defendant touched the victim's breasts. Whatever motive to lie the victim may have had in May, 2006, regarding a possible infection stemming from her sexual relationship with her boyfriend, did not exist in November, 2005, when she first reported to her parents that the defendant had touched her breasts. Additionally, the victim would not have suffered from symptoms of a urinary tract infection as a result of the defendant's contact with her breasts. Thus, the defendant has not persuaded us that the evidence of the victim's sexual relationship with her boyfriend was relevant to understanding the victim's motive, bias or interest on the remaining counts. Accordingly, we conclude that the court properly precluded this evidence on the ground of relevance.

The defendant also argues that the court's ruling violated his right to confrontation. This aspect of the claim requires little discussion. "Cross-examination is the principal means by which the believability of a witness

and the truth of his testimony are tested. . . . The constitutional standard [for cross-examination] is met when defense counsel is permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Cassidy*, 3 Conn. App. 374, 381, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). "It is axiomatic that [a criminal] defendant is entitled fairly and fully to confront and to cross-examine the witnesses against him. . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination." (Citation omitted; internal quotation marks omitted.) *State* v. *Glenn*, 97 Conn. App. 719, 726, 906 A.2d 705 (2006), cert. denied, 281 Conn. 913, 916 A.2d 55 (2007). Because we already have determined that the evidence at issue properly was precluded on the ground of relevance, the defendant cannot demonstrate that the court's proper application of a fundamental rule of evidence infringed on his right to confront his accuser.

The defendant also alleges a violation of his right to present a defense, arguing that the court improperly precluded material and relevant evidence. "As to the defendant's right to present a defense, [t]he sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . [T]he constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to

confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews*, 102 Conn. App. 819, 826–27, 927 A.2d 358, cert. denied, 284 Conn. 911, 931 A.2d 932 (2007). The defendant has not distinguished this claim from his confrontation clause claim, and our conclusion that the court properly precluded the evidence on the ground of relevance leads us to conclude further that the preclusion of the evidence did not violate his constitutional right to present evidence in his defense.[4]

## II

The defendant next claims that the court improperly excluded evidence of the victim's bias, interest or prejudice. Specifically, the defendant contends that the court improperly precluded him from offering the testimony of two Planned Parenthood employees to whom the victim had given inconsistent or false statements that should have been admissible under § 6-5 of the Connecticut Code of Evidence. We disagree.

---

[4] For the first time, on appeal, the defendant argues that the evidence was relevant to the victim's motive to falsely accuse the defendant in order to have him removed from the house so that she could be alone with her boyfriend, and that the evidence was admissible under § 54-86f (1) as to the issue of whether the defendant was the source of the victim's urinary tract infection. We first note that there was no evidence before the jury that the victim actually had a urinary tract infection, nor did the victim ever allege that the defendant was the cause of such an infection. Additionally, the defendant did not raise these grounds of relevance before the trial court. Ordinarily, we will not consider a theory of relevance that was not raised before the trial court. See *State* v. *Pratt*, 235 Conn. 595, 602, 669 A.2d 562 (1995). The defendant, however, does not bring a purely evidentiary claim, but claims that the exclusion of the evidence deprived him of his right to confrontation and his right to present a defense. The defendant asserts that this claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). As stated previously in this opinion, however, the preclusion of irrelevant evidence does not infringe on a defendant's right to confrontation or his right to present a defense. Because no constitutional violation exists, the defendant's claim fails under the third prong of *Golding*.

In his case-in-chief, the defendant sought to introduce the testimony of two Planned Parenthood employees who had met with the victim regarding allegedly deceptive comments made by the victim. The defendant contended that he was seeking to impeach the victim's credibility and argued that admitting the evidence under § 6-5 would not implicate the rape shield statute because they would not be offering evidence of the victim's sexual conduct, but only that the victim made deceptive comments to the witnesses. The court denied the defendant's request to present this evidence on the basis that it is not proper to introduce extrinsic evidence of the conduct of a witness for the purpose of impeaching that witness' credibility.

"A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case. . . . Thus, the answer of the witness on cross-examination [as] to a collateral matter is conclusive and cannot be later contradicted." (Citations omitted; internal quotation marks omitted.) *State v. Colton*, 227 Conn. 231, 247–48, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996); see also Conn. Code Evid. § 6-6 (b), commentary ("the examiner must introduce the witness' untruthful conduct solely through examination of the witness himself or herself"). Thus, "[i]t has long been the rule in Connecticut that extrinsic evidence may not be used to contradict the testimony of a witness with regard to a particular act of misconduct. . . . [I]f the witness stands his ground and denies the alleged misconduct, the examiner must take his answer not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to provide the discrediting acts. . . .

"Extrinsic evidence may be admitted, however, if the subject matter of the testimony is not collateral, that is, if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . Evidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant. It may be . . . the very key to an intelligent appraisal of the testimony of the [witness]. . . . The determination of whether a matter is relevant or collateral . . . generally rests within the sound discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 640–41, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

Here, evidence that the victim made unexplained "deceptive comments" to Planned Parenthood counselors, without more, would not have informed the jury as to the victim's bias, prejudice, interest or motivation to lie. Although the defendant contends on appeal that his proffer in this regard went to the victim's motive to lie about her sexual relationship with her boyfriend, the defendant indicated to the trial court that the "sole purpose would be to have [the witnesses] testify as to the fact that deceptive statements were made to them." The court properly concluded that the defendant was seeking to present extrinsic evidence of a specific instance of conduct of the victim for the purpose of impeaching the victim's credibility. Thus, in refusing to admit this evidence, the court did not abuse its discretion.

III

The defendant finally claims that the court improperly instructed the jury that to find him guilty of risk of injury to a child in violation of § 53-21 (a) (2), the jury had to find that his conduct was "likely to impair the child's health or morals" and that the term "likely" was to be understood as meaning that in all "probability

or possibility," his conduct had impaired the victim's health or morals. Conceding that his claim was not preserved at trial, the defendant asserts that it is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] We review the defendant's claim because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Smith*, 70 Conn. App. 393, 397, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002).

In instructing the jury on the risk of injury offenses, the court stated, in relevant part: "[T]he state does not have to prove that the defendant actually did impair the health or morals of the child. Rather, the state must show that the defendant's behavior was likely to impair the child's health or morals. And likely means in all probability or possibility. Thus, the state must show that it was possible or probable that the sexual and indecent behavior of the defendant would injure or weaken the child's health or morals."

On the basis of our Supreme Court's decision in *State* v. *Romero*, 269 Conn. 481, 849 A.2d 760 (2004), the state concedes, and we agree, that the instruction was improper. In *Romero*, the trial court provided an instruction to the jury on the "likely to impair" requirement of § 53-21 that was identical to that at issue in the present case. Id., 488. On appeal, the Supreme Court concluded that "the term 'likely,' as used in § 53-21 (a), cannot be understood fairly to encompass a meaning

---

[5] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

of either 'possible' or 'in all possibility' and, therefore, the trial court's instructions to the contrary were improper." Id., 491. Because the instruction in the present case mirrors the instruction at issue in *Romero*, we conclude that the court's instruction in that regard was incorrect.

That determination, however, does not end our inquiry. Having concluded that the court improperly instructed the jury, we now turn to a consideration, under the third prong of *Golding*, of whether there exists a reasonable possibility that the jury was misled by these improprieties. See id., 492.

Here, as in *Romero*, the court's improper definition of the term "likely" as "possible" was accompanied by the proper definition of the term as "probable." As our Supreme Court concluded in *Romero*, such "accurate instructions minimized the potential harm flowing from the trial court's improper instructions on the meaning of the term 'likely.' " Id., 494. Additionally, the court in the present case provided a thorough instruction on the concept of reasonable doubt and the state's burden to prove each element of the charged offense beyond a reasonable doubt.

In *Romero*, the court also considered that the jury, by reason of its verdict, necessarily found the defendant to have engaged in sexual intercourse and sexual contact with the minor victim. The *Romero* court stated that "[o]nce the jury determined that . . . intercourse and mutual sexual touching took place, as described by [the victim], it is difficult to imagine a finding that this conduct could *not* be deemed likely—in the context of probably—to impair [the victim's] morals." (Emphasis in original.) Id., 493. Guided by the *Romero* precedent, this court reached a similar result in *State* v. *Arcia*, 111 Conn. App. 374, 389, 958 A.2d 1253 (2008) ("because the jury found the defendant guilty of having sexual

intercourse with someone younger than age sixteen, it is difficult to imagine a finding that this conduct could not be deemed likely . . . to impair [the victim's] morals" [internal quotation marks omitted]), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009); *State* v. *Michael A.*, 99 Conn. App. 251, 266, 913 A.2d 1081 (2007) ("defendant's indecent sexual conduct in relation to the victim, conduct the jury found to have occurred, must be conduct that is 'likely to impair' the health or morals of a child"); and *State* v. *Ritrovato*, 85 Conn. App. 575, 605, 858 A.2d 296 (2004) ("because the jury . . . found the defendant guilty of having sexually assaulted the victim, we find no basis for any argument that the jury could have been uncertain that such an assault did, in fact, impair the child, as alleged in the risk of injury charge"), rev'd in part on other grounds, 280 Conn. 36, 905 A.2d 1079 (2006).

In *Romero, Arcia, Michael A.* and *Ritrovato*, where there was a jury finding of sexual intercourse, the court, on review, was able to conclude, based on the underlying conduct found by the jury, that the jury was not likely to have been misled by the improper instruction on risk of injury. Here, the jury found the defendant guilty of the two charges of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2005) § 53a-73a (a) (1) (A). Thus, by reason of the definition of sexual assault in the fourth degree, the jury had to have found that the defendant intentionally subjected the victim, who was thirteen years old at the time of the incidents at issue, to sexual contact. Additionally, in *State* v. *Pickering*, 180 Conn. 54, 428 A.2d 322 (1980), in which our Supreme Court was confronted with a claim that the risk of injury statute was unconstitutionally vague, the court observed that "[t]his court's opinions pursuant to § 53-21 make it clear that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative

of that statute." Id., 64. Based on *Pickering*, we can say, as well, as to sexual contact, that, it would be "difficult to imagine a finding that this conduct could not be deemed likely—in the context of probably—to impair [the victim's] morals." *State* v. *Romero*, supra, 269 Conn. 493. Accordingly, we conclude that the jury could not reasonably have been misled by the court's improper instruction in reaching the conclusion that the defendant's sexual contact with the minor victim was likely to impair her morals. Thus, the defendant's final claim must fail.

The judgment is reversed only as to the conviction of risk of injury to a child as alleged in the sixth count of the information and the case is remanded for a new trial on that charge only. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.