# STATE OF CONNECTICUT *v.* CLIFFORD P.[1]
## (AC 30192)

Harper, Robinson and Pellegrino, Js.

Argued April 12—officially released September 28, 2010

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

*Natalie C. Rezek*, special public defender, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Vincent J. Dooley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Clifford P., appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). On appeal, the defendant claims that the court improperly (1) denied his request for an evidentiary hearing to determine the admissibility of the victim's alleged prior sex abuse allegations, and (2) excluded records from the department of children and families (department) and prevented him from questioning department workers regarding the records. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 10, 2003, the defendant, the victim's maternal uncle, went to the victim's house to pick her up so that she could baby-sit his two children, the victim's cousins. The victim went to the defendant's house where the victim's aunt, the defendant's wife, also resided. The victim's aunt then left to pick up dinner and returned shortly thereafter. The defendant was in the house, drinking beer, all evening.

Later in the evening, the victim's cousins went to bed, and the victim remained in the living room[2] with her aunt and the defendant. After talking with her aunt and the defendant for awhile, the victim fell asleep on a couch watching television. The victim woke up to someone touching her. When the victim opened her eyes, she saw that it was the defendant. He was touching her vaginal area and putting "[h]is hand under [the victim's] shorts through [her] underwear" and "putting his finger in and out" of her vagina. When the victim realized what was happening, she pretended to be asleep. After he started touching her, the victim's aunt, who had been asleep on another couch in the living room, woke up and told the defendant that they should go to bed. The defendant responded that he would go to bed in a few minutes. After the victim's aunt went to bed, the defendant resumed touching the victim. "[H]e unbuttoned [the victim's] pants at that point and then just started doing the same thing he was before." The victim testified that the defendant's touching was painful.

The victim's aunt soon came back into the living room and said something to the defendant, causing him to stop and to turn around. The victim took the opportunity to make it clear that she was waking up. The victim told her aunt that she was going to sleep in her cousin's room. When the victim went into her cousin's room, she awoke her cousin. Her cousin asked, "[D]id he do it to you, too?" The victim's aunt later came into the cousin's room to ask the victim what was wrong, and the victim told her what had happened. Eventually, the victim's aunt called the victim's grandmother to come get her. The next morning, the victim's grandmother took the victim to the house of the victim's mother at

[2] The living room had two couches. The victim was lying on one and her aunt was on the other. The defendant was in between the two couches on the floor.

which point the victim told her mother about the incident. The victim's mother called the police and took the victim to a hospital where a rape kit was administered and her statement was taken by the police.

The examination revealed a 25 percent cleft in the hymen, which the hospital report indicated was an "unusual finding but does not necessarily correlate with the identified digital penetration." It further revealed a finding of candida vulvitis.[3] Additionally, a wet prep was performed, and the results were consistent with bacterial vaginismus.[4] The nurse conducting the examination formed an impression that the victim had bacterial vaginosis,[5] which is a condition that may be found in adolescents who are not sexually active and that could be attributed to wearing a wet bathing suit for extended periods of time.

The defendant was charged with the crimes of risk of injury to a child in violation of § 53-21 (a) (2) and sexual assault in the second degree in violation of § 53a-71 (a) (1). On April 4, 2008, the state filed a motion in limine, requesting that "the defendant be precluded from making inquiry into the sexual conduct, including, but not limited to, any allegation of the prior sexual abuse of the [victim]." On April 23, 2008, the defendant filed an objection to the motion in limine and a request for an evidentiary hearing. On April 25, 2008, the court held a hearing in which the defendant made his offer

[3] Candida vulvitis is an "[i]nfection with, or disease caused by" "[i]nflammation of the vulva." Stedman's Medical Dictionary (27th Ed. 2000) pp. 277, 1980.

[4] Vaginismus is defined as "painful spasm of the vagina preventing intercourse." Stedman's Medical Dictionary (27th Ed. 2000) p. 1925. It appears that the term was misused in the place of vaginosis in the hospital report, as vaginismus is not a bacterial infection and, therefore, cannot be tested through a wet prep. See id.

[5] Vaginosis is defined as "infection of the human vagina that may be caused by anaerobic bacteria . . . ." Stedman's Medical Dictionary (27th Ed. 2000) p. 1925.

of proof to justify his request for an evidentiary hearing. The defendant wanted to admit evidence of an alleged false prior accusation of sexual assault made by the victim against another of her aunts, N, and N's boyfriend. The defendant's offer of proof consisted of (1) a statement from the victim's mother that she did not believe the victim had been molested by N and N's boyfriend; (2) a statement from a baby-sitter, dated December, 1992; (3) a risk assessment document, dated January, 1993; (4) a social work analysis; (5) a social work report; (6) a child advocacy clinic report, dated August, 2003; and (7) miscellaneous records from the department.

On April 29, 2008, the court denied the defendant's request for an evidentiary hearing. The court found that the defendant's offer of proof did not demonstrate the alleged falsity of the victim's prior complaint of sexual assault and based its conclusion on (1) the lack of substantiation that the victim actually made a prior allegation; (2) the remoteness in time of the alleged prior complaint; (3) the speculative nature of the evidence; (4) the lack of falsity proof; (5) the age of the victim[6] at the time of the alleged prior complaint; and (6) the lack of evidence that the victim, at the age of three, had the ability to distinguish right from wrong in making statements to third parties. On May 6, 2008, following a jury trial, the defendant was found guilty of risk of injury to a child and sexual assault in the second degree. The defendant was sentenced to twelve years incarceration, execution suspended after five years, nine months of which were mandatory, and ten years probation. This appeal followed. Other relevant facts will be set forth in the analysis as necessary.

---

[6] The victim was three years old when she made the alleged prior accusation.

I

The defendant first claims that the court improperly denied his request for an evidentiary hearing. Specifically, the defendant claims that the court (1) improperly found that his offer of proof did not establish the relevancy of the victim's alleged prior accusation of sexual assault, (2) improperly considered whether the evidence was more prejudicial than probative and (3) violated the defendant's right to present a defense pursuant to the sixth amendment to the United States constitution. We disagree.

We begin our analysis of the defendant's claim by setting forth the applicable standard of review. Our analysis of the defendant's claim is based on well established principles of law. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 769–70, 991 A.2d 1086 (2010).

The defendant argues that the court improperly found that the evidence he presented in his offer of proof did not establish the relevancy of the victim's alleged prior false accusations of sexual assault. He asserts that he met his burden by presenting prior claims of sexual assault made by the victim and establishing an inference that they were false. He contends that the statements made by the victim in 1992 were prior sexual assault allegations. Further, the defendant argues that the statements made by the victim's mother indicated that she thought that the victim was lying. This, the defendant

urges, combined with the fact that the allegation was unsubstantiated, satisfied the requisite standard for relevancy and was a sufficient offer of proof to warrant an evidentiary hearing.

"[T]he trial court [is] bound, in the exercise of its discretion, by our rape shield statute." *State* v. *Sullivan*, 244 Conn. 640, 648, 712 A.2d 919 (1998). General Statutes § 54-86f,[7] commonly referred to as the rape shield statute, was enacted to "bar or limit the use of prior sexual conduct of an alleged victim of sexual assault because it is such highly prejudicial material." *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). "Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue [harassment], encouraging

---

[7] General Statutes § 54-86f entitled "Admissibility of evidence of sexual conduct," provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the prior sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her prior sexual conduct . . . or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters." (Citation omitted.) Id.

In the present case, the defendant wanted to circumscribe the rape shield statute by establishing the relevancy of his proffered evidence to the critical issue of the victim's credibility.[8] Because the evidence the defendant wanted to present to the jury was that of an alleged prior accusation of sexual assault, the defendant was required to "make a showing that, in fact, the prior complaint was: (1) made by the victim; and (2) false" before being entitled to an evidentiary hearing. *State* v. *Sullivan*, supra, 244 Conn. 649.

"In order to carry his threshold burden of establishing relevance . . . [the defendant was required to] make an offer of proof as a prerequisite to obtaining an evidentiary hearing to determine the admissibility of evidence . . . ." (Internal quotation marks omitted.) Id. The offer of proof must "enable the trial court to make an informed ruling in connection with the exercise of its discretion on the issue [of relevancy]"; (internal quotation marks omitted) id., 650; and "contain specific evidence rather than vague assertions and sheer speculation." (Internal quotation marks omitted.) *State* v. *Martinez*, supra, 295 Conn. 771. Specifically, with respect to evidence that the victim has previously falsely alleged sexual assault, the *Martinez* court concluded that the defendant must show "conclusively that such claim was demonstrably false." Id., 774.

In *Martinez*, the defendant sought to introduce evidence that the victim had previously falsely claimed

---

[8] The defendant stressed that because the case was void of physical evidence establishing that the victim has been sexually assaulted, the gravamen of the case was the credibility of the victim versus his credibility.

that her brother and stepuncle had sexually assaulted her. Id., 766. As part of his offer of proof, the defendant presented a police report containing a statement by the victim's sister that on a previous occasion she had seen her sister having sex with her brother and that just before the incident at issue, the victim expressed her desire to have her brother join her in the shower, which was where she was assaulted. Id., 767. The defendant also presented a police report with a statement by a social worker that the victim altered her story to indicate that her stepuncle, not her brother, had sexually assaulted her. Id., 768. The court found that the defendant did not meet his burden of proof because nothing in the sister's statement negated the possibility that on the alleged occasion the victim's brother forced her to have sex with him, even if the initial shower was consensual. Id., 773. It did not, therefore, support the inference that the victim was lying. Further, the court concluded that although the statement by the social worker indicated that the victim recanted her claim against her brother, it did not prove that such a claim was false. Id., 774.

Further, in *State* v. *Barrett*, 43 Conn. App. 667, 670, 685 A.2d 677 (1996), cert. denied, 240 Conn. 923, 692 A.2d 819 (1997), the defendant's offer of proof contained records establishing the victim's volatile relationship with her mother and the defendant before and after the victim's suicide attempts, the victim's admission to doing " 'crazy things' " when angry and prior sexual assault allegations by the victim against male family members. This court agreed with the trial court's ruling that the records regarding the victim's relationship with her mother and the defendant were too remote in time to be relevant as a possible motive for her allegations, and this court stated that the inconsistencies in the victim's recountings of the prior sexual assaults "may

point to [a] flawed memory . . . [but] do not supply evidence of falsity." Id., 675.

Conversely, in *State* v. *Manini*, 38 Conn. App. 100, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995), this court concluded that the defendant's offer of proof was adequate to support an inference that the victim's prior sexual assault allegations were false. The defendant offered the victim's medical records showing that the victim had made two prior claims of sexual assault. Id., 115. The records also indicated that the victim had experienced "delusions and hallucinations of a highly sexualized nature." Id. The court determined that the evidence showing that the victim had made prior sexual assault claims, coupled with evidence that she had experienced sexual delusions and hallucinations, supported an inference that the prior claims were false. Id.

In the present case, the defendant's offer of proof neither demonstrated that the victim actually made an allegation of sexual assault, nor established "conclusively that such claim was demonstrably false." *State* v. *Martinez*, supra, 295 Conn. 774. The reports that the defendant submitted were from 1992, when the victim was three years old. We agree with the trial court's reasoning that the victim's age, limited language skills and capacity to understand the difference between innocuous and inappropriate touching, weakened the defendant's assertion that the victim's statements were allegations of sexual assault. It is ambiguous as to whether the victim had the mental capacity to allege sexual assault or whether she was referring to innocent activity that took place during caretaking activities. Similar to *Barrett*, even if the mother did not believe that the victim had been sexually assaulted, that statement does not necessarily negate the victim's statements. See *State* v. *Barrett*, supra, 43 Conn. App. 670.

The statements made by the victim leave open the possibility that the victim either misconstrued the touching by N and N's boyfriend or did not realize the effect of what she was saying.

Further, the defendant's only evidence to demonstrate that these statements, if intended as accusations, were false, was a statement by the victim's mother that she did not believe that the victim had been sexually assaulted. In a 1992 statement, the victim's mother noted that the victim's behavior changed a couple of months prior to the incident and further relayed how the victim became upset when the mother went to work. She did not opine, however, that the victim's allegations were an extension of such behavior.

This evidence is similar to the social worker's statement in *Martinez* because in that case, the defendant's argument was that the inconsistencies in the victim's statements to the social worker could give the inference that the victim was lying. *State* v. *Martinez*, supra, 295 Conn. 774. The court rebuffed that argument by pointing out that a recantation by a victim does not equate to a lie. Id.; see also *State* v. *Morales*, 45 Conn. App. 116, 125, 694 A.2d 1356 (1997) ("[a] poor or flawed memory by [the victim] in making an accusation is not sufficient to supply evidence of falsity"), appeal dismissed, 246 Conn. 249, 714 A.2d 677 (1998). In the present case, although there are department reports indicating that the victim gave inconsistent statements regarding the 1992 incident, the defendant does not offer any link between these inconsistencies and the mother's statements, nor would such inconsistencies necessarily support a conclusion that the victim was lying. See *State* v. *Martinez*, supra, 774. Further, the defendant fails to offer any other foundation, such as eyewitness observations, on which the victim's mother may have based her statement.

The defendant's offer of proof was the type of "vague and speculative" offer of proof that the *Martinez* court warned against. *State* v. *Martinez*, supra, 295 Conn. 772; see also, e.g., *State* v. *Morales*, supra, 45 Conn. App. 125 (victim's inability to recall accusing defendant's son of molestation did not establish falsity of accusation); *State* v. *Stevenson*, 43 Conn. App. 680, 694–95, 686 A.2d 500 (1996) (victim's history of general delusions not specifically sexual delusions and not admissible to establish falsity of prior accusations), cert. denied, 240 Conn. 920, 692 A.2d 817 (1997); *State* v. *Slater*, 23 Conn. App. 221, 225–26, 579 A.2d 591 (1990) (existence of similarities between prior sexual assault allegations and present allegations not enough to establish falsity). The defendant presented an isolated statement made by a third party, without a foundation for why the witness made the statement, how the witness meant the statement or an indication of what the witness would say under oath, in an effort to establish that the victim's prior allegations were false. This is not the type of clearly established offer of proof that warrants an evidentiary hearing. See *State* v. *Manini*, supra, 38 Conn. App. 115 (documented sexual hallucinations gave inference prior sexual assault accusation could have been based on delusion). We conclude that the defendant did not meet his burden through his offer of proof, and, therefore, the trial court did not abuse its discretion in denying the defendant's request for an evidentiary hearing.[9]

---

[9] The defendant also argues that the court improperly considered the probative value versus the prejudicial effect of the evidence when deciding the defendant's motion for an evidentiary hearing. Because we have concluded that the evidence was not relevant, we do not reach the issue of whether the court may consider probative value and prejudicial effect before an evidentiary hearing. See *State* v. *Adorno*, 121 Conn. App. 534, 544–45, 996 A.2d 746 (2010) (describing two part process of first determining relevancy of evidence, then determining whether its probative value outweighs prejudicial effect).

Further, because the evidence is not relevant, we do not reach the issue of whether the defendant's rights afforded to him by the sixth amendment

## II

The defendant next claims that the court improperly excluded records from the department and did not allow him to question department workers regarding the records. Specifically, the defendant argues that the department documents were relevant to show that the victim was not credible because she was engaging in attention seeking behavior resulting from her tumultuous family life. Further, the defendant asserts that *State* v. *William C.*, 267 Conn. 686, 841 A.2d 1144 (2004), is controlling and instructs that the department records should have been admitted as evidence under General Statutes § 52-180, the business record exception to the hearsay rule. We disagree.

We begin this analysis by setting forth the appropriate standard of review. Our analysis of the defendant's claim is based on well established principles of law. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." *State* v. *Ritrovato*, 280 Conn. 36, 50, 905 A.2d 1079 (2006).

As a basic principle, evidence must be relevant to the defendant's theory of the case to be admitted. See

to the United States constitution were implicated. "The defendant's sixth amendment right . . . does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . [T]he constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *Andrews*, 102 Conn. App. 819, 826–27, 927 A.2d 358, cert. denied, 284 Conn. 911, 931 A.2d 932 (2007).

*State* v. *Adorno*, 121 Conn. App. 534, 546, 996 A.2d 746 (2010). Evidence is relevant when it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence . . . ." (Internal quotation marks omitted.) *State* v. *Ritrovato*, supra, 280 Conn. 50. "The proffering party bears the burden of establishing the relevance of offered evidence." *State* v. *Crespo*, 114 Conn. App. 346, 362, 969 A.2d 231, cert. granted on other grounds, 292 Conn. 917, 973 A.2d 1276 (2009).

On May 6, 2008, the defendant sought to enter into evidence sealed department records to support his contention that the victim was not credible and had motivation to lie about the allegations against him. The records that the defendant has attached as an appendix to his appellate brief, however, are not the records that the trial court viewed in camera on May 6, 2008. This court will review only the evidentiary ruling made on the records that were marked as exhibit A for identification and that the court actually reviewed on May 6, 2008. See *State* v. *LaMothe*, 57 Conn. App. 736, 741, 751 A.2d 831 (2000) ("[b]ecause our review is limited to matters in the record, we will not address issues not decided by the trial court"). Our analysis, therefore, will be based only on those records.

The defendant asserts that the department records contain statements documenting the victim's 1992 accusation against N and N's boyfriend that they digitally penetrated her vagina. Further, the defendant contends that the statements by the victim's mother that she did not believe that the victim had been sexually molested and that the victim told her that she hated her when she got ready for work, showed that the victim was unhappy with her living situation and was acting out, possibly by lying about a sexual assault, to procure attention. These statements were submitted, however,

as part of the defendant's offer of proof and are not contained in those documents reviewed during the May 6, 2008 in camera inspection.

The defendant also argues that the department's heavy involvement with the family evinces that the victim was neglected and in an abusive atmosphere, which explains why she may have been seeking attention. The documents submitted at the May 6, 2008 in camera inspection are all records from the department progressively documenting the status of the victim's family situation. Unlike the documents at issue in *William C.*, which explicitly documented the victim's problems with veracity,[10] the department documents in the present case do not suggest that the victim was lashing out in response to her home life. Further, they do not reasonably support an inference that the victim was engaging in attention seeking behavior or provide any instance that casts doubt on the victim's credibility. We conclude that the documents are not relevant to the defendant's theory that the victim was fabricating the present sexual assault allegation. The court, therefore, did not abuse its discretion in refusing to admit the sealed department documents as evidence.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

[10] The documents contained department worker entries that "relate[d] to the victim's problems with veracity following her placement into foster care; indicate[d] the victim herself had questioned whether the defendant actually had abused her or whether she had 'dreamed' up the abuse; and [stated that] the victim had conveyed her doubts as to the legitimacy of her accusations to various other individuals." *State* v. *William C.*, supra, 267 Conn. 693.

[11] Because we conclude that the documents are not relevant, we do not reach the issue of whether the department records fall within the business record exception to the hearsay rule pursuant to § 52-180. Similarly, because the documents are not relevant, we further conclude that the court did not abuse its discretion in not allowing the defendant to question department workers regarding the irrelevant documents.