STATE OF CONNECTICUT *v.* ALBERT V. FARAH
(AC 29875)

Lavine, Robinson and Lavery, Js.

Argued November 18, 2010—officially released February 8, 2011

*Lauren Weisfeld,* senior assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Anne Mahoney,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Albert V. Farah, appeals from the judgments of conviction, following a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and seven counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). On appeal, the defendant claims that the court violated his constitutional rights to due process, confrontation and to present a defense, as well as his rights pursuant to (1) General Statutes (Rev. to 2007) § 17a-28 (*l*), when it would not order the state's attorney to examine department of children and families (department) records pertaining to the minor victims of the defendant's sexual assaults for exculpatory information, and (2) General Statutes § 54-86f, referred to as the rape shield statute, when it prohibited him from eliciting testimony from the victims pertaining to their exposure to sexual activity with individuals other than the defendant. We affirm the judgments of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant was born in Ecuador on April 4, 1961, and moved to the Hartford area in 1989. Between 1999 and 2001, the defendant resided in Manchester, and then in Hartford before moving to New Britain in July, 2003.

Sometime in 1999 or 2000, D,[1] who was then fourteen years old, was walking on a street in Hartford when the defendant, who was sitting in his parked car, asked her if she "wanted to hang out and stuff like that."[2] The

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] At the time, the defendant was working as a drug and alcohol counselor for the methadone program at the Hartford Dispensary and worked on a part-time basis as a drug and alcohol counselor for Alcohol and Drug Recovery Centers, Inc., in Hartford. The defendant testified that D approached his car and asked for a ride to McDonald's because "she got the munchies."

defendant then gave D his cell phone number so they could arrange to meet again later.

D called the defendant's cell phone number several times. In response, the defendant picked up D from a location near her home and took her to one of his former residences in Hartford or Manchester. The defendant paid D approximately $20 to $25 to engage in oral sex with him during these visits.

On one occasion, the defendant went looking for D at her home, but she was not there. Instead, the defendant encountered D's older sister, S. This was the first time that the defendant had met S. The defendant and S, who was then fifteen years old, developed a relationship that was similar to his relationship with D. The defendant took S to one of his former or current residences in Hartford, Manchester or New Britain and paid her money to engage in sexual intercourse. During some of those encounters, the defendant also provided S with alcohol.[3]

S and D later introduced the defendant to a mutual friend, M. When M was fourteen years old, the defendant convinced her to come to his residence in Hartford by telling her that he was going to get her drunk. The defendant provided M with drugs and alcohol and engaged in sexual intercourse with her. Afterward, the defendant gave her approximately $20. The defendant engaged in this conduct with M a couple of more times in both Hartford and Manchester.

The police became aware of the defendant's relationship with the victims during an unrelated investigation

---

He further testified that he was concerned that she might have a drug habit so he gave her his business card. According to his testimony, D's mother called him one week later, and he went to meet with D.

[3] The defendant admitted that he engaged in vaginal intercourse with S but stated that the first sexual encounter occurred one week after she became eighteen years of age.

of alleged sexual assaults involving the victims. Those assaults were perpetrated by Ismael and Paula and were captured on video and made available on the Internet. During this investigation, M's sister, R, notified the police that the defendant called M on the telephone and that he came to M's house to pick her up in his car. R was able to identify the defendant because her boyfriend had recognized him as a counselor from a detoxification clinic.

In connection with his conduct with the victims, the defendant was charged in two separate criminal files with eight counts of sexual assault in the second degree in violation of § 53a-71 (a) (1), two counts of risk of injury of a child in violation of § 53-21 (a) (1) and two counts of risk of injury to a child in violation of § 53-21 (a) (2). These files were joined for trial.

On August 23, 2007, the defendant filed a motion for disclosure, production and inspection, requesting that the court order the state to produce all exculpatory information or material that may be favorable to him. On October 1, 2007, the court addressed the defendant's motion and, at this hearing, defense counsel specifically indicated that she was interested in department reports. The court, however, did not issue an order concerning the defendant's motion at that time. Also on October 1, 2007, the defendant filed a motion in limine to preclude application of § 54-86f to the risk of injury charges, thereby permitting him to present evidence of the victims' sexual histories.[4]

---

[4] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so

On October 11, 2007, the defendant filed a second motion for disclosure, production and inspection in which he requested the court to order the state to comply with his August 23, 2007 motion. In support of his request, the defendant noted that it was his understanding that the department had reports and notes that contained or might contain exculpatory information. The defendant also requested that, at a minimum, such potentially exculpatory material should be submitted to the court for an in camera review.

The court held a hearing on the same day to consider all outstanding motions, including the defendant's second motion for disclosure, production and inspection and motion in limine. With respect to the motion for disclosure, production and inspection, the court, relying on *State* v. *Esposito*, 192 Conn. 166, 471 A.2d 949 (1984),[5] and without objection, stated that the department records could only be reviewed if the defense made a preliminary showing that they should be disclosed and then the witness to whom the records applied authorized disclosure. If the witness did not give authorization,

relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. . . ."

[5] *Esposito* states in relevant part: "If, however, the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. . . . If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal." *State* v. *Esposito*, supra, 192 Conn. 179–80.

then, the court noted, the witness' testimony would be stricken from the record. The state indicated during this hearing that it was unaware of any department records in reference to the defendant's case and that it had spoken to a department worker who stated that there had been no disclosures from the victims in the defendant's case. The court then denied the defendant's motion without prejudice.

The court also denied, without prejudice, the defendant's motion in limine. Relying on *State* v. *Kulmac*, 230 Conn. 43, 644 A.2d 887 (1994), the court concluded that it could not grant "a categorical [m]otion in limine." It stated, however, that if, during trial, the defendant made an offer of proof that met one or more of the four exceptions listed in § 54-86f, the court would revisit the issue.

The evidentiary portion of the defendant's trial began on October 15, 2007. Before the jury entered the courtroom, defense counsel indicated that she had subpoenaed the department records relating to Paula. The court responded that it intended, absent some agreement by counsel to the contrary, to follow *Esposito*, and that the defendant still needed to make a preliminary showing to warrant any in camera review of the confidential material.[6] During trial, however, Paula was not called as a witness, and the victims were not questioned, either by the state or the defense, about any information that they gave to the department concerning the defendant.

[6] Specifically, the court stated: "It seems to me that the defendant obviously does have confrontation rights involved here. And I'm inclined not to view the matter overly technically. If, for example, one of the actual complaining witnesses, with respect to that witness if the preliminary showing is made, the court may well conclude that the *Esposito* procedure should be implemented with respect, you know, to that particular witness. . . . So, I mean, you'd still have to make the preliminary showing with respect to that particular witness."

After commencement of the evidence portion of the trial, outside of the jury's presence, defense counsel also sought permission to question D concerning her prior sexual conduct and sexual conduct contemporaneous with the period in which she alleged she had engaged in sexual activity with the defendant. Specifically, counsel argued that pursuant to § 54-86f (2) and (4), the defense should be permitted to pierce the rape shield statute because D was unclear and hesitant in her identification of the defendant and may have been confusing him with a different sexual partner. The court sustained the state's objection to this line of questioning, concluding that there was no possibility of confusion, the evidence proffered was not relevant or material and that evidence of D's sexual history did not constitute a defense.

On October 18, 2007, the jury returned verdicts of guilty to seven counts of sexual assault in the second degree and two counts of risk of injury to a child. On January 4, 2008, the defendant was sentenced on both dockets to fifty years imprisonment, execution suspended after serving thirty years, followed by thirty-five years of probation. The defendant appealed from the judgments of conviction.

We begin our analysis by setting forth the proper standard of review. The defendant claims that the record demonstrates that the court violated his constitutional and statutory rights. While confrontation issues provide a backstop, we note that his claims challenge the court's evidentiary rulings. "Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982).

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will

be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Hart*, 118 Conn. App. 763, 786, 986 A.2d 1058, cert. denied, 295 Conn. 908, 989 A.2d 604 (2010).

I

The defendant first claims that the court violated his constitutional rights to due process, confrontation and to present a defense, as well as his rights pursuant to § 17a-28 (*l*),[7] when it would not order the state to examine department records pertaining to the victims for exculpatory information. We disagree.

We repeat that "[i]t is well established that a defendant has the right to confront witnesses against him as guaranteed by the confrontation clauses of both our federal and state constitutions. . . . [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the [s]tate's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due

---

[7] General Statutes (Rev. to 2007) § 17a-28 (*l*) provides in relevant part: "Information disclosed from a person's [department of children and families] record shall not be disclosed further without the written consent of the person, except if disclosed to a party or his counsel pursuant to an order of a court in which a criminal prosecution or an abuse, neglect, commitment or termination proceeding against the party is pending. A state's attorney shall disclose to the defendant or his counsel in a criminal prosecution, without the necessity of a court order, exculpatory information and material contained in such record and may disclose, without a court order, information and material contained in such record which could be the subject of a disclosure order. . . ."

process. . . . We are mindful, however, that the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (Citations omitted; internal quotation marks omitted.) *State v. Rolon*, 257 Conn. 156, 174–75, 777 A.2d 604 (2001).

One such circumstance in which the constitutional right to confrontation will give way to other legitimate interests occurs when confidential department records are involved. General Statutes (Rev. to 2007) § 17a-28 (b) provides in relevant part that "records maintained by the department shall be confidential and shall not be disclosed. Such records of any person may only be disclosed, in whole or in part, to any individual, agency, corporation or organization with the consent of the person or as provided in this section . . . ." Our courts have recognized that the primary purpose of this statute is "to preserve the confidentiality of information in connection with the department's child protection activities or activities related to a child while in the care or custody of the department." *Abreu* v. *Leone*, 120 Conn. App. 390, 411, 992 A.2d 331, cert. denied, 297 Conn. 926, 998 A.2d 1193 (2010). The statute also protects children from "the embarrassment, stigmatization and emotional harm that can result from the mere disclosure that he or she is under the department's care." (Internal quotation marks omitted.) Id.

Section 17a-28 and our case law, however, establish certain circumstances in which department records may be disclosed without the consent of the individual to whom they apply. Specifically, to obtain an in camera review of confidential department records believed to contain exculpatory information, "the defendant must at least make some plausible statement of how the information would be both material and favorable to his defense." *State* v. *Leduc*, 40 Conn. App. 233, 248, 670 A.2d 1309 (1996); see also *State* v. *Berube*, 256 Conn. 742, 756, 775 A.2d 966 (2001) ("[a]lthough we agree that

due process requires that a defendant be entitled to an in camera review of confidential department files in some instances, we conclude that there is nothing in the record to indicate that the defendant in this case met the requisite threshold that would require a court to undertake such a review").

A threshold showing is required notwithstanding a criminal defendant's due process rights; see *State* v. *Leduc*, supra, 40 Conn. App. 244–50; and confrontation rights; see *State* v. *McClelland*, 113 Conn. App. 142, 159, 965 A.2d 586, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). While our cases have not addressed whether a preliminary showing is required for claims based on a right to present a defense, we note that "[a] defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment"; (internal quotation marks omitted) *State* v. *Hedge*, 297 Conn. 621, 625 n.2, 1 A.3d 1051 (2010); and apply the same requirements applicable to a claim based on rights pursuant to the confrontation clause.[8]

Although advance notice of the need to make a preliminary showing is not required, the court, nonetheless, notified the defendant on two separate occasions that it would not review any department records absent a preliminary showing that the records contained exculpatory information.[9] Defense counsel also acknowledged the proper procedures for disclosure of

[8] Additionally, we note that "[t]he sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . [T]he constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Internal quotation marks omitted.) *State* v. *Adorno*, 121 Conn. App. 534, 547, 996 A.2d 746, cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010).

[9] The transcript provides in relevant part:

"[Defense Counsel]: My only difficulty in understanding how that procedure works as a practical matter is knowing how the defense is suppose[d] to point to specific items in the sealed record—

department records and that she was fully aware of the steps that needed to be taken before the court could conduct an in camera review. Still, there is nothing in the record to suggest that a threshold showing was made. Speculation that records might contain exculpatory information does not suffice. We conclude that the court did not abuse its discretion by failing to review the department records subpoenaed by the defendant or ordering the state's attorney to review the records because the defendant did not make a preliminary showing that they contained exculpatory information.

The defendant argues, however, that the court applied the wrong procedure for determining whether confidential records may be disclosed or undergo an in camera review. Specifically, he argues that the procedures articulated in *Esposito* are not applicable to disclosure of department records. Instead, the defendant claims that § 17a-28 (*l*) mandates that the state both read the relevant department files and disclose any exculpatory material that they contain.

At trial, the defendant did not object to the court's use of the procedures articulated in *Esposito* for disclosure of confidential records, nor did he raise any claims pursuant to his rights under § 17a-28 (*l*).[10] Practice Book § 60-5 provides in relevant part that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Additionally, this court previously has stated that it "will not consider issues which are brought to the court's attention for the first time by way of the appellant's brief." (Internal quotation marks omitted.) *CMB Capital*

---

"The Court: I can't give you advice. You just have to read *Esposito* and, you know, proceed accordingly. It would be your responsibility to make— under *Esposito* to make a preliminary showing. And sometimes you can do that and sometimes you can't."

[10] During oral argument, counsel for the defendant conceded that § 17a-28 (*l*) was not raised during trial.

*Appreciation, LLC* v. *Planning & Zoning Commission*, 124 Conn. App. 379, 396, 4 A.3d 1256 (2010). We conclude, therefore, that the defendant failed to preserve this claim for appeal properly.

The defendant argues, alternatively, that if this issue has not been preserved, his claim is adequate for review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 60-5. The defendant's claim, however, does not meet the requirements for *Golding* or plain error review.[11] We therefore decline to address it on appeal.

II

The defendant next argues that the court violated his constitutional rights to due process, confrontation and to present a defense, as well as his rights pursuant to § 54-86f, when it prohibited him from presenting evidence concerning the victims' sexual histories.[12] We are

---

[11] As noted, the defendant's evidentiary claims are couched in the nomenclature of a constitutional claim but are actually evidentiary in nature. "[T]he [*Golding*] rule is designed to protect fundamental constitutional rights. It deals with substance, not labels." (Internal quotation marks omitted.) *Rosenfeld* v. *Rosenfeld*, 115 Conn. App. 570, 579, 974 A.2d 40 (2009). Additionally, "[t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 204–205, 982 A.2d 620 (2009). Because this is not such an extraordinary situation, plain error review is also improper.

[12] The defendant can only rely on § 54-86f (2) and (4) as possible exceptions to the prohibition of evidence concerning a victim's sexual history. The state claims that § 54-86f (2) does not apply here because none of the victims testified about their past sexual conduct aside from their conduct with the defendant. We do not agree. D testified on direct examination that she stopped seeing the defendant when she became pregnant. D later clarified

not persuaded and conclude that the court did not abuse its discretion in prohibiting the defendant from questioning the victims about their sexual histories.

Section 54-86f "was enacted to bar or limit the use of prior sexual conduct of an alleged victim of sexual assault because it is such highly prejudicial material. . . . Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue [harassment], encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters." (Citation omitted; internal quotation marks omitted.) *State* v. *Clifford P.*, 124 Conn. App. 176, 182–83, 3 A.3d 1052, cert. denied, 299 Conn. 911, 10 A.3d 529 (2010).

The rape shield statute "directs the court to examine the defendant's constitutional rights, implicating both his sixth amendment right to confront witnesses and his fourteenth amendment due process right to call witnesses on his own behalf." (Internal quotation marks omitted.) *State* v. *Malon*, 96 Conn. App. 59, 74, 898 A.2d 843, cert. denied, 280 Conn. 906, 907 A.2d 93 (2006). As with laws and policies surrounding the disclosure of confidential department records, the right to confront and to cross-examine victims of sexual assault about their sexual histories is not absolute and may bow to accommodate other legitimate interests. Id. "One of the legitimate interests is the court's right, indeed, duty, to

on cross-examination she was not claiming that the defendant was the father of her child, but the proverbial door concerning D's sexual history had been opened.

exclude irrelevant evidence. . . . If the court determines that the proffered evidence is not relevant, the defendant's right to present witnesses in his own behalf has not been affected and the evidence can properly be excluded." (Citation omitted; internal quotation marks omitted.) Id.

Finally, "[a] defendant who seeks to introduce evidence under one of the exceptions of § 54-86f must first make an offer of proof." (Internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 771, 991 A.2d 1086 (2010). "A clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." (Internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 825, 970 A.2d 710 (2009).

In his attempt to introduce evidence concerning the victims' sexual histories, the defendant made no offers of proof in regard to M and S but did make such an offer as to D.[13] Therefore, the court properly prohibited any inquiries concerning M's and S's sexual histories.

Our determination of whether the court properly prohibited the defendant from questioning D about her sexual history is guided by *State* v. *Kulmac*, supra, 230

---

[13] The defendant relied on a police witness statement made by D as his offer of proof. The portion of the transcript concerning her statement to the police provides in relevant part:

"[Defense Counsel]: This witness began in a very tentative, foggy kind of way of being unable to remember how far she got in school, she didn't remember whether or not M had seen the defendant, even though the state attempted to encourage her to remember that. She said a number of times that she wasn't sure about things.

"The Court: She never said she wasn't sure about the defendant or what she did with the defendant. Am I correct?

"[Defense Counsel]: That's correct. . . . She was not asked whether she had, during that same time frame, performed sexual acts, specifically oral sex with any one else.

"The Court: That's true. That's why I have to know how that's relevant.

"[Defense Counsel]: I think that's relevant to our determining whether that shakes her determinateness that it was, in fact, [the defendant]."

Conn. 43. In *Kulmac*, the defendant had sexually abused two girls when they were nine and eleven years old. Id., 49–50. At the time of trial, the girls were fourteen and fifteen years old. Id., 49. The defendant claimed that the court violated his rights pursuant to the confrontation clause by excluding evidence, based on the rape shield statute, that other men had sexually abused the two girls. Id., 50. Specifically, the defendant claimed that this evidence was necessary because the high number of assaults committed on the girls by other men created a risk of confusion. Id., 55.

On appeal, our Supreme Court stated that "[w]hether there is a sufficient basis for a claim that a witness is confused, so as to permit cross-examination that would otherwise be inadmissible, is a question of fact that is properly left to the discretion of the trial court." Id. The court noted that the trial court specifically concluded that the victims were not confused and affirmed the court's decision to exclude evidence of their sexual histories.[14] Id.

As in *Kulmac*, the court here specifically found that D did not appear confused. Moreover, the court found that any sexual activity that D had with other men would not constitute a defense for the defendant. Therefore, we conclude that the court properly exercised its discretion by precluding inquiry into D's prior sexual history.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[14] In *State* v. *Rolon*, supra, 257 Conn. 156, our Supreme Court noted that the victims in *Kulmac* were of an age at which most individuals are less likely to be confused over an individual's identity and are capable of understanding matters of a sexual nature. Id., 181. In the present case, D was fourteen when the assaults occurred and twenty years old at the time of trial.