******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES H.*
(AC 35754)

DiPentima, C. J., and Lavine and Alvord, Js.

*Argued April 9—officially released June 17, 2014*

(Appeal from Superior Court, judicial district of
Windham at Danielson, Swords, J.)

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Matthew A Crockett*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, James H., appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2); one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1); two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2); and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The defendant claims that the trial court (1) abused its discretion when it "failed to conduct the most elementary inquiry into an allegation of possible jury misconduct"; (2) abused its discretion in applying General Statutes § 54-86f, commonly known as the rape shield statute, when it "failed to conduct an evidentiary hearing permitting the defendant to question [one of] the complainant[s] regarding her sexual conduct;" (3) abused its discretion when it precluded the defendant "from questioning [one of] the complainant[s] regarding the contents of the Department of Children and Families [(department)] records previously disclosed"; (4) violated the defendant's due process right to a fair trial by "referring to the crimes with which the defendant had been charged as crimes exhibiting 'compulsive sexual criminal behavior' "; and (5) erred when it concluded that "the adverse spousal testimony privilege, codified at General Statutes (Rev. to 2003) § 54-84a, applied in this case" and thereafter admitted into evidence text messages sent between the defendant and his former wife, C.H.H.[1] We affirm the judgment of the trial court.

The jury reasonably could have found that, beginning at the ages of approximately five and four respectively, the defendant repeatedly sexually assaulted two of his daughters, C and J, over the course of approximately nine years. The assaults consisted of fondling, digital penetration, and oral sex. In the case of C, the assaults progressed to vaginal intercourse when she was twelve or thirteen years old. In December, 2007, the police were notified of the allegations of sexual abuse, and the victims underwent medical examinations. C tested positive for chlamydia, and the results of J's exam were indeterminate. At trial, both C and J provided detailed testimony regarding the sexual assaults. In addition, C testified that she had never engaged in sexual intercourse with anyone other than the defendant. The defendant, who elected to represent himself during the trial,[2] testified in his own defense and categorically denied sexually assaulting either of his daughters. He claimed that they were fabricating the allegations against him in retaliation for his attempts to discipline them. At the conclusion of trial, the jury found the defendant guilty on all counts. The court imposed a total effective sentence of sixty years incarceration,

execution suspended after forty years, and twenty-five years of probation with multiple special conditions. This appeal followed.

I

We first address the defendant's claim that the court abused its discretion when it "failed to conduct the most elementary inquiry [into an allegation of possible juror misconduct] required to satisfy the mandate set forth in *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995)." The defendant specifically asserts that the court failed to "conduct a basic factual inquiry into the substantive content of possible misconduct" and to "generate a record adequate to determine whether any misconduct occurred, and if it did, whether it was prejudicial." The defendant's claim is unpreserved, and he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[3] based upon his fundamental right to a trial before an impartial jury. We review the defendant's claim under *Golding* because the record is adequate for review and the claims alleged are of constitutional magnitude.[4] We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.

The following additional facts are relevant to the defendant's claim. On July 29, 2010, at the start of the fourth day of trial, the court advised the parties that it had been informed by a marshal that a judicial employee, Leah Ralls, "may have overheard the jurors say something yesterday while they were out on a break." Accordingly, the court called Ralls to the witness stand so that she could testify as to what she heard. Ralls stated that while walking past two jurors sitting at a picnic table, she "overheard someone make mention to the cross-examination of the case" but that she "did not hear any specifics" or "any details of the conversation." In response to the court's questions, Ralls reiterated that she "just heard a reference" to "cross-examination" but overheard no details about "cross-examination."[5]

When a trial court is presented with an allegation of jury misconduct in a criminal case, the court "must conduct a preliminary inquiry, on the record . . . regardless of whether an inquiry is requested by counsel." *State* v. *Brown*, supra, 235 Conn. 526. "The form and scope of such inquiry is left to the discretion of the trial court based on a consideration of multiple factors, including: (1) the private interest of the defendant; (2) a risk and value assessment of additional procedural safeguards; and (3) the government's interest. . . . In outlining these factors, we also [have] acknowledged, however, that [i]n the proper circumstances, the trial court may discharge its obligation simply by notifying the defendant and the state of the allegations, providing them with an adequate opportunity to respond and stating on the record its reasons for the

limited form and scope of the proceedings held." (Citation omitted; internal quotation marks omitted.) *State* v. *Alston*, 272 Conn. 432, 453, 862 A.2d 817 (2005). Accordingly, "[a]ny assessment of the form and scope of the inquiry that a trial court must undertake when it is presented with allegations of jur[or] [bias or] misconduct will necessarily be fact specific. . . . We [therefore] have limited our role, on appeal, to a consideration of whether the trial court's review of alleged jur[or] misconduct can fairly be characterized as an abuse of its discretion." (Internal quotation marks omitted.) *Kervick* v. *Silver Hill Hospital*, 309 Conn. 688, 700, 72 A.3d 1044 (2013).

On the basis of the record, the trial court's actions in the present case satisfy the preliminary inquiry required by *Brown*. After learning of the alleged misconduct from the marshal, the court, on the record, alerted both the defendant and the state, and conducted a basic factual inquiry by calling Ralls to testify as to exactly what she overheard. Following this inquiry, the court concluded that "based upon what [Ralls] has testified to," it did "not intend to explore this any further with the jurors" and stated that it would "remind [the jurors] again that they are not to discuss this case with anyone or amongst themselves, as [the court] ha[d] repeatedly [instructed the jurors] throughout the case, when they go out on any future breaks." Neither the defendant nor the state objected to the court's proposed course of action, and neither the defendant nor the state requested that the court make any further inquiries. As we have recognized, the trial court is in a superior position to evaluate the credibility of allegations of jury misconduct; see *State* v. *Owens*, 100 Conn. App. 619, 628 n.7, 918 A.2d 1041, cert. denied, 282 Conn. 927, 926 A.2d 668 (2007); therefore, it was well within the court's purview to conclude that the reference to "cross-examination" overheard by Ralls did not warrant further investigation. Moreover, "[where] the trial court was in no way responsible for the juror misconduct . . . we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct." (Internal quotation marks omitted.) *State* v. *Bozelko*, 119 Conn. App. 483, 494, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010), cert. denied, U.S. , 134 S. Ct. 1314, 188 L. Ed. 2d 331 (2014). The defendant here has not made any such showing of prejudice. Accordingly, we conclude that the court did not abuse its discretion in its investigation of alleged juror misconduct.

## II

Next, we turn to the defendant's claim that the court abused its discretion in applying § 54-86f, the rape shield statute, when it failed to conduct an evidentiary hearing permitting the defendant the opportunity to question his

daughter, C, regarding her sexual conduct. He maintains that he "clearly met his preliminary burden of demonstrating [that] the evidence was sufficiently relevant under § 54-86f, where, at the pretrial hearing, both parties averred that [C] would testify that she had tested positive for chlamydia, a sexually transmitted disease, and had never engaged in vaginal penile intercourse with anyone other than the defendant, and defense counsel represented that the defendant had never test[ed] positive for chlamydia." We disagree with the defendant's claims.

The following facts are relevant to this claim. On July 21, 2010, the trial court heard pretrial motions,[6] including the defendant's motion for an evidentiary hearing under § 54-86f (1), (2), and (4),[7] and the defendant's motion to admit evidence of sexual conduct. The court then determined that the defendant lacked a good faith basis to ask C whether she had sexual intercourse with anyone other than the defendant; however, it agreed, at the defendant's request, to defer its ruling "until after hearing the medical evidence . . . ." The defendant did not subsequently seek to introduce evidence of C's sexual conduct during his cross-examination of C or after the testimony of the state's medical expert.

"[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Farah*, 126 Conn. App. 437, 444–45, 13 A.3d 1108, cert. denied, 300 Conn. 931, 17 A.3d 68 (2011).

Section 54-86f "greatly restricts the admissibility of evidence of the prior sexual conduct of a sexual assault victim. . . . The policies behind the rape shield statute are well established. . . . The statute is intended to protect victims' personal privacy, to shield them from unnecessary harassment and embarrassment in court, and to encourage them to disclose sexual assault by reducing some of the deterrents to reporting. . . . Moreover, the statute reflects a modern understanding of the general irrelevance of prior sexual conduct to particular allegations of rape." (Citations omitted; internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 53, 644 A.2d 887 (1994).

"[The rape shield statute] provides for a two step process before evidence proffered by a defendant as falling under one of the statute's exceptions may be admitted. First, if the defendant has satisfied his prelimi-

nary burden in his offer of proof to show that the evidence is potentially relevant, pursuant to the statute the trial court must conduct a hearing to determine the admissibility of the evidence. Second, [i]f, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion." (Internal quotation marks omitted.) *State* v. *Crespo*, 303 Conn. 589, 602, 35 A.3d 243 (2012). "In the first step of this two part process, the defendant bears the burden of showing that the proffered evidence overcomes the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a [sexual assault] victim is inadmissible and satisfies the statute's requirement that only evidence relevant to the case, rather than evidence relevant merely to demonstrate the unchaste character of the victim, be admissible." (Internal quotation marks omitted.) Id. "[A]n offer of proof should contain specific evidence rather than vague assertions and sheer speculation." (Internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 771, 991 A.2d 1086 (2010).

Here, the defendant's offer of proof that C's sexual conduct was relevant was that C tested positive for chlamydia while the defendant "had never been diagnosed as having chlamydia." The defendant's attorney subsequently admitted to the trial court, however, that *the defendant had never actually been tested for chlamydia*. Furthermore, the defendant offered no evidence to suggest or establish that C had been engaged in sexual conduct with someone other than the defendant beyond his broad assertions that C "had a boyfriend" and that there were issues of credibility.[8] Accordingly, it is clear that the trial court acted well within its discretion when it denied the defendant's motion for lack of a good faith basis without holding an evidentiary hearing.

### III

The defendant also claims that the trial court abused its discretion when it refused to allow him to cross-examine C and J about a number of instances reflected in records from the department where C and J "denied any issues or concerns in the home." We disagree.

The following additional facts are relevant to our resolution of this claim. Prior to the commencement of trial, the defendant filed a motion for production and inspection in camera of the department records. After considering the defendant's offer of proof at the motion hearing on July 21, 2010, the court denied the motion on the ground that the defendant had not met his burden of showing that the records contained exculpatory material.[9]

At trial, the defendant made a second offer of proof prior to the testimony of C on July 26, 2010. The court agreed to review the department records with respect

to two incidents that occurred in October, 2000, and May, 2006. The court informed the defendant that he could not question C at that time regarding the department records but, "if necessary," C and J could be recalled, "if needed, solely for the purpose of [the defendant] cross-examining them with respect to that one area: their prior denials." Thereafter, on July 29, 2010, the court informed the parties that it found two pieces of potentially exculpatory evidence in the department records and ordered those "small portions" of the record, appropriately redacted, distributed to each side. That same day, the defendant attempted to recall the victims to the witness stand to "address the issues as far as the [department] comments and whether or not there was exculpatory evidence and get that on the record." The state objected, arguing that it was "cumulative with the state's direct examination" of the victims as well as "cumulative to their cross-examinations." The court sustained the state's objection to the defendant's request to recall the victims to testify and found that the proposed testimony would be cumulative of other evidence of a similar quality and quantity already adduced in this case."

"Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Morquecho*, 138 Conn. App. 841, 853–54, 54 A.3d 609, cert. denied, 307 Conn. 941, 56 A.3d 948 (2012).

In the present case, the defendant claims that the evidence he sought to elicit from the victims "was not cumulative because it constituted new material relevant to the critical issue in this case, the credibility of the [victims]." The transcript of the proceedings reveals, however, that the victims already had "testified that they had been questioned by their mother on approximately five occasions as to whether anybody had ever inappropriately touched them and they admitted that they denied that to their mother,"[10] and that they each "admitted that during the [department] investigation . . . they never told anyone that [the defendant] inappropriately touched them." Accordingly, we conclude that the court did not abuse its discretion in refusing to allow the defendant to recall his daughters in order to question them about their statements in the department's records.

IV

The defendant next claims that the court "violated [his] due process right to a fair trial by referring to the crimes with which the defendant had been charged as crimes exhibiting compulsive sexual criminal behavior."[11] (Internal quotation marks omitted.) He asserts that the court's use of that phrase "deprived him of the presumption of innocence, diluted the state's burden of proof and reflected that the trial judge was not impartial." We disagree.

The record reveals the following relevant facts. The court instructed the jury on the permitted use of uncharged sexual conduct evidence three times during the trial: (1) immediately prior to C's testimony;[12] (2) immediately prior to J's testimony;[13] and (3) in its final instructions.[14] The defendant did not object to any of these three instructions at the time that they were given. The record is adequate for review, and we assume, without deciding, that the claim alleged is of constitutional magnitude. We conclude, however, that the alleged constitutional violation does not clearly exist; therefore, the defendant's claim fails to satisfy the third prong of *Golding*.[15]

Our analysis of the defendant's claim begins with the applicable standard of review for a claim of instructional error. "[T]o determine whether the court's instructions were improper, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Ciullo*, 140 Conn. App. 393, 409, 59 A.3d 293, cert. granted on other grounds, 308 Conn. 919, 62 A.3d 1133 (2013).

"[P]ublic policy considerations militate in favor of recognizing a limited exception to the prohibition on the admission of uncharged misconduct evidence in sex crime cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior." (Emphasis omitted.) *State* v. *DeJesus*, 288 Conn. 418, 470, 953 A.2d 45 (2008). That approach, however, "does not vest trial courts with carte blanche to allow the state to introduce any prior sexual misconduct evidence against an accused in sex crime cases. . . . [E]vidence of uncharged sexual misconduct is admissible only if it is relevant to prove that [a] defendant had a propensity or a tendency *to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged.* . . . Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . .

not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed [against] persons similar to the prosecuting witness."[16] (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 472–73.

In the present case, the defendant was alleged to have sexually assaulted his two young daughters repeatedly over the course of approximately nine years of their childhood. As our Supreme Court noted in *DeJesus*, "because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct . . . are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Citations omitted.) Id., 469–70. Accordingly, it is clear that the offenses that the defendant *was charged with* were of a compulsive, sexual nature. Despite the defendant's assertion that the court's cautionary instructions "suggested [that] the defendant had a propensity to engage in aberrant, compulsive sexual criminal behavior," a review of the transcripts reveals otherwise. In fact, the instructions served to *caution the jury* that it was going to be hearing uncharged sexual misconduct evidence, and that this evidence was to be introduced for the very limited purpose of showing that the defendant may have a propensity to engage in aberrant and compulsive sexual misconduct. The court also cautioned the jury repeatedly that "evidence of this criminal behavior is not sufficient proof to prove that the defendant committed the allegations that are charged here, so that you can't convict him on this evidence alone." We therefore conclude that the court's instructions to the jury on the use of uncharged sexual misconduct did not infringe upon any of the defendant's constitutional rights, and therefore fails to satisfy the third prong of *Golding*.

V

Finally, the defendant claims that the court improperly concluded that the adverse spousal testimony privilege, codified at General Statutes (Rev. to 2003) § 54-84a,[17] applied in this case, and allowed the state to introduce into evidence text messages sent between the defendant and his former wife, C.H.H. We are not persuaded.

The following additional facts are relevant to this claim. During the testimony of C.H.H. at trial, the state sought to introduce into evidence approximately forty text messages sent to her by the defendant between December 2 and 7, 2007. The defendant objected, arguing, inter alia, that the text messages were protected by the marital communications privilege.[18] The state urged the court to adopt a child abuse exception to the privilege on public policy grounds. The court

agreed with the state and ruled that the policy behind the child abuse exception in General Statutes (Rev. to 2003) § 54-84a applied with equal force to the common-law marital communications privilege. Accordingly, the court overruled the defendant's objection and permitted the text messages to enter into evidence.

To the extent that a trial court's admission of evidence is based on a statutory interpretation, our standard of review is plenary. *State* v. *Apt*, 146 Conn. App. 641, 646, 78 A.3d 249 (2013), cert. granted on other grounds, 311 Conn. 902, 83 A.3d 604 (2014). We review a trial court's decision to admit or exclude evidence, if premised on a correct view of the law, for an abuse of discretion. *State* v. *Heredia*, 139 Conn. App. 319, 330, 55 A.3d 598 (2012), cert. denied, 307 Conn. 952, 58 A.3d 975 (2013). Here, however, we need not decide whether the court properly interpreted and applied § 54-84a or if the admission into evidence of the text messages between the defendant and C.H.H. was an abuse of discretion. Even if we assume that the texts were inadmissible, the error was harmless.

"[T]he appellate harmless error doctrine is rooted in [the] fundamental purpose of our criminal justice system—to convict the guilty and acquit the innocent. The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. . . . When an improper evidentiary ruling is nonconstitutional in nature, it is the defendant's burden to demonstrate that such an error was harmful." (Citations omitted; internal quotation marks omitted.) *State* v. *Maner*, 147 Conn. App. 761, 772, 83 A.3d 1182, cert. denied, 311 Conn. 935,        A.3d (2014). "In order to establish the harmfulness of a trial court ruling, the defendant must show that it is more probable than not that the improper action affected the result. . . . The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Internal quotation marks omitted.) *State* v. *Martinez*, 143 Conn. App. 541, 568, 69 A.3d 975, cert. granted on other grounds, 310 Conn. 909, 76 A.3d 625 (2013). "[A]ny error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony." (Internal quotation marks omitted.) *Prentice* v. *Dalco Electric, Inc.*, 280 Conn. 336, 358, 907 A.2d 1204 (2006), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007).

In the present case, the admission of the defendant's text messages to C.H.H. did not substantially affect the

jury's verdict because similar text messages between the defendant and his daughter, C, already were in evidence. Despite some minor differences in the specific content of the text messages, the defendant's messages to his wife and his daughter contained similar inculpatory statements.[19] The defendant has made no claim that the text messages sent between himself and his daughter, C, were privileged communications, and the jury was free to consider them when reaching its verdict. We therefore conclude that the defendant's text messages to C.H.H. were cumulative of his text messages to C and, therefore, their admission was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] The defendant and C.H.H. were married at the time the text messages were sent.

[2] The court appointed standby counsel, who periodically assisted the defendant during the proceedings.

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] "[J]ury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors." (Internal quotation marks omitted.) *State* v. *Ciullo*, 140 Conn. App. 393, 417–18, 59 A.3d 293, cert. granted on other grounds, 308 Conn. 919, 62 A.3d 1133 (2013).

[5] Ralls testified as follows:

"The Court: So, Ms. Ralls, this is what was reported to me, and correct me if I'm wrong, okay? It was reported to me that yesterday—I believe it was yesterday; is that correct?

"[Ralls]: Yes.

"The Court: Okay. Yesterday, you had walked outside the employee exit of this building and the jurors were on a break outside, and as you were walking by them, you overheard one of the jurors or more than one of the jurors say something. Is what I understand correct so far?

"[Ralls]: To some degree, yes, Your Honor.

"The Court: Okay. So, tell me—correct what I just said.

"[Ralls]: Well, as I was walking out of the employee entrance to go to lunch, there were two jurors sitting at the picnic table. I overheard someone make mention to the cross-examination of the case. Your Honor, I did not hear any specifics. I did not hear any details of the conversation. I immediately began to walk toward [an individual's] vehicle, as he was giving me a ride to lunch. That's the extent of my—of what I heard, Your Honor.

"The Court: Okay. So, you just heard a reference to cross-examination, but—

"[Ralls]: Yes.

"The Court:—but no details about cross-examination?

"[Ralls]: No. No, Your Honor.

"The Court: Okay.

"[Ralls]: No, not at all.

"The Court: All right.

"[Ralls]: Just a reference.

"The Court: Just a reference. And that was one juror—

"[Ralls]: That was—

"The Court:—standing in the presence of another or sitting in the presence of another.

"[Ralls]: Standing in the presence of another.

"The Court: Okay. All right. Okay. Well, thank you. I just wanted to get that on the record, and I appreciate you coming into court and giving that information to us. Thank you."

[6] The defendant was represented by counsel during this proceeding.

[7] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or . . . (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ."

[8] The following colloquy occurred between the court and defense counsel:

"The Court: Before I hear from [the prosecutor], what evidence does the defense have that victim C had sexual conduct or sexual intercourse or some sexual relations with another individual?

"[Defense Counsel]: We don't. We know—for the record, we know she had had a boyfriend. She's denied it, and in many cases that's what we get. But the allegation is that the sexual relations with the defendant ended, I believe, in . . . . at least the summer of [2007]. The allegations were made, depending on how the evidence is looked at [in] . . . late November, [2007], so approximately five or six months earlier, relations had stopped. I'm not an expert on how long chlamydia stays in the system, how long it takes to show. We would like to make some inquiries. [An expert] is going to testify, and I believe she is going to testify about that. We can certainly ask her in terms of the source of chlamydia. We know [C] had a boyfriend, and she's denied having sex with that boyfriend, but if she testifies she's having a relationship, on the issue of credibility, that's also a forum I think we can go into.

"Again, the state has all the ammunition and evidence on [its] side right now. We're just looking for an opportunity to, we think, we comply with the statute [§ 54-86f] in terms of [subdivisions (1) and (2)] and possibly [(4)] as well. We made an offer of proof and argued at some point in time that the girls made these complaints because they were upset that the defendant was the disciplinarian. They have been physically abusive and verbally abusive. He had not allowed them to do certain things, and much more so than the mother, and that goes to motive and bias and prejudice for the fourth prong as well, Your Honor, so for those reasons we would ask we be allowed to inquire."

[9] The defendant was represented by counsel during the motion hearing.

[10] The victims' mother testified that these denials took place over the course of ten years.

[11] The defendant raised a general due process claim, and his brief contains no analysis under the state constitution. We therefore consider any such claim abandoned. See *Frauenglass & Associates*, *LLC* v. *Enagbare*, 149 Conn. App. 103, 111 n.7,      A.3d      (2014).

[12] The court instructed the jury as follows: "You're now going to hear evidence of other misconduct or crimes committed by the defendant which occurred prior to May 23 of 2003. And I need to tell you that that's being admitted for a very limited purpose, and that limited purpose is as follows:

"In a criminal case, when a defendant is charged with a crime exhibiting aberrant or compulsive criminal sexual behavior, evidence of his commission of another offense or offenses is admissible and may be considered by you for its bearing on any matter which—for which it is relevant. Evidence of a prior offense on its own is not, however, sufficient to prove the defendant guilty of the crimes charged in the information.

"Bear in mind as you consider this evidence that at all times the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. I remind you, he is not on trial for any act, conduct, or offense not charged in the information.

"So, the misconduct evidence prior to May of 2003—23, 2003, is being introduced because it's allowed by our case law to show that the defendant has a propensity to engage in aberrant, compulsive, sexual criminal behavior,

and for that purpose only.”

[13] The court instructed the jury as follows: “Ladies and gentlemen, just like with the prior witness, you’re going to hear now what we call misconduct evidence, which is uncharged criminal behavior on the part of the defendant. And that would be behavior that occurred before May 23 of 2003, just like with the other witness. And it’s being introduced for a very limited purpose here.

“And that limited purpose is, as you have previously heard, is admissible and considered for its bearing on the issue of the defendant’s propensity to commit crimes of an aberrant and compulsive sexual behavior. And I just want to caution you that evidence of this criminal behavior is not sufficient proof to prove that the defendant committed the allegations that are charged here, so that you can’t convict him on this evidence alone.

“This evidence, however, is being introduced to show that he has that propensity to commit these crimes, and you have to decide whether or not the remaining evidence that you hear here of offenses and activities after May 23, 2003, constitute all of the elements of the crimes that are [the subject of the] trial here: the three crimes that are charged against the defendant for activities with [J].”

[14] The court instructed the jury as follows: “All right. Now, I’ll speak about the evidence of other criminal sexual behavior of the defendant not charged in the information. In a criminal case in which the defendant is charged with a crime exhibiting aberrant or compulsive, sexual criminal behavior, evidence of the defendant’s commission of another offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant. Evidence of a prior offense on its own is not, however, sufficient to prove the defendant guilty of the crimes charged in the information.

“Bear in mind as you deliberate on the evidence that at all times the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information.”

[15] In the alternative, the defendant asks us to invoke our supervisory powers to review his claim. “Appellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole.” (Internal quotation marks omitted.) *State* v. *Milner*, 130 Conn. App. 19, 33, 21 A.3d 907 (2011), appeal dismissed, 309 Conn. 744, 72 A.3d 1068 (2013). This case does not present the type of extraordinary circumstances for which our supervisory powers are reserved. Accordingly, we decline to exercise our supervisory powers to review this claim.

[16] Section 4-5 of the Connecticut Code of Evidence was subsequently amended, effective in 2012, to conform with the principles enunciated in *State* v. *DeJesus*, supra, 288 Conn. 474. This section now provides in relevant part that “[e]vidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect.” Conn. Code Evid. § 4-5 (b).

[17] General Statutes (Rev. to 2003) § 54-84a provides: “If any person on trial for crime has a husband or wife, he or she shall be a competent witness but may elect or refuse to testify for or against the accused, except that either spouse who has received personal violence from the other or is the spouse of one who is charged with any violation of any of sections 53-20, 53-21, 53-23, 53-304, 53a-70, 53a-70a, 53a-71 and 53a-83 to 53a-88, inclusive, may, upon his or her trial for offenses arising out of such personal violence or from violation of the provisions of any of said sections, be compelled to testify in the same manner as any other witness.”

We note that following the defendant’s trial, § 54-84a was substantially revised. See Public Acts 2011, No. 11-152, § 14. Section 54-84a (b) now provides in relevant part: “The testimony of a spouse may be compelled, in the same manner as for any other witness, in a criminal proceeding against the other spouse for . . . bodily injury, sexual assault, risk of injury pursuant to section 53-21, or other violence attempted, committed or threat-

ened upon the minor child of either spouse, or any minor child in the care or custody of either spouse."

[18] The defendant also argued that C.H.H. "lacked personal knowledge," and that the "text messages were not relevant and would be prejudicial of a fair trial." The trial court rejected both of these grounds, and the defendant has not challenged that ruling on appeal.

[19] The defendant attempts to distinguish the text messages by arguing that "the nature of the text messages between the defendant and [C], although somewhat inculpatory, were consistent with the defendant's trial testimony" while the communications between the defendant and C.H.H. "can fairly be categorized as an admission of guilt," as he "confirmed the allegations made by [C] and [J]." In support of his argument, the defendant points to his text message to C.H.H. in which he admits, "Girls are not liars." A review of the record reveals, however, that a jury reasonably could read the texts sent to C as a confirmation of the allegations made against him. These text messages include statements such as: "Pl[ease] [I] swear [I] never meant to hurt [you]! I will get help and make sure [I] never hurt any of [you] again in any way!"; "Never wanted to hurt any of [you] girls! Pl[ease] forgive me!"; and, "I am so very sorry [C]! I wish [I] was a better dad to you!"

––––––––––––––––––––––––––––––